IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROY E. CONNELY                                    CV. 3:08-769-MA

                  Plaintiff,                    OPINION AND ORDER

        v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

                  Defendant.

DAVID B. LOWRY
9900 S.W. Greenburg Road
Columbia Business Center, Suite 235
Portland, OR 97223

        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
ADRIAN BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

DAVID R. JOHNSON
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

        Attorneys for Defendant

MARSH, Judge

        Plaintiff Roy E. Connely brings this action for judicial

review of a final decision of the Commissioner of Social Security

denying his applications for disability insurance benefits (DIB)

1 - OPINION AND ORDER

under Title II and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C §§ 401-403, 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  For the reasons that follow, I REVERSE the final decision of the Commissioner, and REMAND this case for an immediate award of benefits.

## PROCEDURAL BACKGROUND

Plaintiff contends disability beginning on November 16, 2000.  His applications were denied initially and upon reconsideration.  An administrative law judge (ALJ) conducted a hearing on November 3, 2004 and issued an unfavorable decision on December 10, 2004.  Plaintiff appealed that decision to the United States District Court in Case No. 06-351-MA.  Because the hearing transcript contained inaudible portions making the case non-reviewable, the case was remanded to the Commissioner for a *de novo* hearing.  Pursuant to the remand order, the ALJ conducted another hearing on March 5, 2007.  At that hearing, three witnesses testified:  plaintiff; plaintiff's vocational rehabilitation counselor, Margaret Tibet; and vocational expert, Gary Jesky.  The ALJ issued an unfavorable decision on April 12, 2007.  The Appeals Council noted that plaintiff was found disabled as of May 8, 2007, based upon a subsequent supplemental security income application.  Nonetheless, the Appeals Council took no action on plaintiff's subsequent favorable determination

and concluded that it did not warrant changing the ALJ's April 12, 2007 decision.  Thus, the ALJ's April 12, 2007 decision became the final decision of the Commissioner for purposes of the court's review.

### FACTUAL BACKGROUND

Plaintiff was 50 years old on the date he alleges he became disabled, and was 56 years old on the date of the ALJ's decision. He completed the tenth grade in high school, and eventually earned his GED with assistance from a scribe.  Plaintiff last worked in 1998.  Plaintiff has past relevant work as a logger, truck driver, and skidder operator.

### THE ALJ'S DISABILITY ANALYSIS

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2001.  A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured.  42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts

to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform.  Yuckert, 482 U.S. at 141-42.

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since November 16, 2000, his amended alleged onset of disability.  See 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq*., 416.920(b), 416.971 *et seq*.

At step two, the ALJ found that plaintiff had the following severe impairments:  degenerative disc disease in his cervical and lumbar spine with scoliosis, and hepatitis C.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform medium exertion work activities.  The ALJ also determined that plaintiff is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently.  He is able to stand and/or walk six hours during a full-time eight hour workday.  He is able to sit for six hours during a full-time eight hour workday.  He is limited to occasional crawling, but is otherwise able to engage in frequent climbing, balancing,

stooping kneeling, and crouching.  <u>See</u> 20 C.F.R. §§ 404.1527,
404.1529, 416.927, 416.929.

At step four, the ALJ found plaintiff capable of performing
his past relevant work (PRW) as a truck driver and skidder
operator.  <u>See</u> 20 C.F.R. §§ 404.1565, 416.965.  The ALJ did not
reach step five of the sequential evaluation.  Accordingly, the
ALJ concluded that Plaintiff is not disabled within the meaning
of the Act.

## **ISSUES ON REVIEW**

Plaintiff contends that the ALJ made several errors: (1)
improperly assessed his credibility; (2) improperly assessed the
medical evidence; (3) improperly assessed the lay witness
testimony and that of vocational expert Margaret Tibet; (4)
failed to develop the record regarding plaintiff's mental
impairments; (5) the RFC failed to include functional limitations
caused by plaintiff's nonsevere mental impairments; (6) the
hypothetical posed to the vocational expert was flawed and thus
the finding that plaintiff can perform his past relevant work is
erroneous; and (7) improperly excluded lay testimony when
determining whether plaintiff met or equaled a listing at step
three.

## **STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision
if the Commissioner applied proper legal standards and the

5 - OPINION AND ORDER

findings are supported by substantial evidence in the record.  42
U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir.
1995).  "Substantial evidence means more than a mere scintilla
but less than a preponderance; it is such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  <u>Id.</u>   The court must weigh all the evidence,
whether it supports or detracts from the Commissioner's decision.
<u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  The
Commissioner's decision must be upheld, even if the evidence is
susceptible to more than one rational interpretation.  <u>Andrews</u>,
53 F.3d at 1039-40.  If the evidence supports the Commissioner's
conclusion, the Commissioner must be affirmed; "the court may not
substitute its judgment for that of the Commissioner."  <u>Edlund v.
Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

<u>**DISCUSSION**</u>

**I.    Plaintiff's Credibility**

In deciding whether to accept subjective symptom testimony
about a claimant's alleged disability, such as pain or
depression, an ALJ must perform two stages of analysis.  20
C.F.R. §§ 404.1529, 416.929.  The first stage is a threshold test
in which the claimant must produce objective medical evidence of
an underlying impairment that could reasonably be expected to
produce the symptoms alleged.  <u>Smolen v. Chater</u>, 80 F.3d 1273,
1282 (9th Cir. 1996).  Here, there is no dispute that plaintiff

presented objective medical evidence in support of his claim of degenerative disc disease, and Hepatitis C that could reasonably be expected to produce some pain.

At the second stage of the credibility analysis, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Smolen, 80 F.3d at 1284; see also Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  Clear and convincing reasons may include medical evidence tending to discount the severity of the claimant's subjective claims. Smolen, 80 F.3d at 1283.  The ALJ may consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  Smolen, 80 F.3d at 1284; SSR 96-7p, 1996 WL 37186.

At the hearing, Plaintiff testified that he is unable to work due to pain in his back, neck and feet, his mobility is limited, and that he is depressed and has difficulty concentrating, has difficulty completing tasks, and suffers

impaired memory.  However, the ALJ concluded the intensity, persistence and limiting effects of these symptoms were not as severe as he alleged.

Here, the ALJ's reasons for discrediting plaintiff do not reach the clear and convincing standard.  There is no evidence whatsoever that plaintiff is a malingerer.  The ALJ discredited plaintiff in part, based on his criminal history which includes sexual offender charges and selling methamphetamine.  Some courts have found a criminal record relevant to assessing the claimant's credibility if it involves a crime of dishonesty or moral turpitude.  <u>Albidrez v. Astrue</u>, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007)(ALJ properly discredited claimant based on prior felony convictions including robbery and showing false identification to a peace officer); <u>see also</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(ALJ may properly rely on ordinary techniques of credibility); FED. R. EVID. 609(a)committee note (defining crimes of dishonesty to include perjury, false statement, criminal fraud, embezzlement or false pretenses which bear on the accused's propensity to testify truthfully).  <u>C.f.</u> <u>Brown v. Astrue</u>, 2008 WL 4279401, *6 (E.D. Cal. slip copy Sept. 16, 2008)(ALJ could not discredit claimant on basis of DUI convictions).  In this case, reliance on plaintiff's criminal history was an appropriate basis for discrediting him.

However, the alleged inconsistencies between plaintiff's self-described activities of daily living and his alleged limitations are debatable at best.  For example, the ALJ noted that plaintiff watches television daily, and is able to complete household chores, such as cooking, cleaning, washing dishes, and doing laundry.  The ALJ stated that plaintiff drives an automobile, takes care of two large dogs, enjoys fishing, occasionally helps deliver calves, grocery shops and completes other household errands.  The ALJ stated that plaintiff enjoys playing cribbage with his son, and requires no assistance with his personal hygiene or financial affairs.

But at the hearing, plaintiff testified he is unable to fly fish any longer, and there was evidence that on the rare occasion that he does fish, he brings along a cot in order to lie down. And, plaintiff testified that the few times he does drive, he skips his pain medication in order to do so.  (Tr. 705.) Plaintiff also testified that he can't sit for long stretches and needs to get up and move around and lie down periodically.  (Tr. 700.) And, there is no record evidence that plaintiff remained able to assist with calving in 2007.

Additionally, the ALJ erroneously discredited plaintiff for pursuing only a conservative course of treatment for his low back pain.  The ALJ may not discredit plaintiff on the basis that he has not had surgery because surgery has not been recommended by

his physicians.  Carmickle v. Comm'r., Soc. Sec. Admin., 533 F.3d
1155, 1161-62 (9th Cir. 2008)(a claimant may not be discredited
for pursuing a conservative course of treatment where the
claimant has a good reason for not seeking more aggressive
treatment).  On May 26, 2005, Christine A. Zotter, P.A., pursuant
to a neurosurgery consultation, advised that plaintiff was not a
surgical candidate at that time. (Tr. 669-70.)  Although the ALJ
correctly noted that plaintiff's primary care provider did
recommend that he begin engaging in aerobic activity, the record
also indicates that plaintiff takes prescription pain medications
two to three times daily, in addition to muscle relaxers, which
is more than mere routine care would suggest.  Thus, it was
improper for the ALJ to discredit plaintiff for receiving only
routine treatment.

       Accordingly, I conclude that the ALJ's adverse credibility
finding does not meet the clear and convincing standard.  Robbins
v. Soc. Sec. Admin., 466 F.3d 880, 884-85 (9th Cir. 2006).

## II. Physician's Opinions

       To reject the uncontroverted opinion of a treating or
examining physician, the ALJ must present clear and convincing
reasons for doing so.  Rodriguez v. Bowen, 876 F.2d 759, 761-62
(9th Cir. 1989); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th
Cir. 2005).  If a treating or examining doctor's opinion is
contradicted by another doctor's opinion, it may be rejected by

specific and legitimate reasons.  <u>Bayliss</u>, 427 F.3d at 1216.

When evaluating conflicting opinions, an ALJ is not required to

accept an opinion that is not supported by clinical findings, or

is brief or conclusory.  <u>Id.</u>

Plaintiff argues that the ALJ erred in assessing the medical

evidence in this case, resulting in a faulty residual functional

capacity (RFC) assessment.  Plaintiff contends the ALJ improperly

rejected medical evidence from various providers and omitted

discussion of relevant, probative evidence when formulating his

RFC.  I address these records in turn.

I find no error in the ALJ's assessment of the records from

Dr. Ellen Schoenfelder, M.D., from whom plaintiff sought

treatment for low back pain from January to September 2000.  The

ALJ reported the following regarding Dr. Schoenfelder:

> [Plaintiff] reported on August 24, 2000 that
> he had problems with his low back. Ellen
> Schoenfelder, M.D., had given him some
> samples of Celebrex, and [plaintiff] stated
> this was helpful.  Dr. Sch[o]enfelder noted
> on examination of the claimant his straight
> leg raise was negative bilaterally.  Distal
> tendon reflexes were symmetrical.
> [Plaintiff] was able to walk on his toes and
> heels.  He had somewhat of a flattening of
> the lumbar curvature with forward flexion.
> Hyperextension beyond 10 degrees caused
> increased pain across the low back.  Dr.
> Schoenfelder reported the claimant did not
> have any neurological symptoms at that time.

A review of Dr. Schoenfelder's records indicates that she

did not offer an opinion of plaintiff's degenerative disc

disease, nor did she indicate what, if any, functional
limitations plaintiff suffered as a result of his low back pain
at that time. (Tr. 232-42.) At best, Dr. Schoenfelder's records
indicate that plaintiff's low back pain was being treated
successfully with Celebrex at that time. The ALJ's findings are
supported by substantial evidence, and I find no error in the
ALJ's treatment of those records.

Plaintiff also contends that the ALJ erred in not including
any assessment of the records of Brian Rodgers, M.D. in the
decision. Dr. Rodgers treated plaintiff for a low back pain from
July 1998 to February 1999, due to an on-the-job injury he
suffered in 1996. As plaintiff correctly notes, the ALJ did not
discuss any records from Dr. Rodgers in the decision. A review
of the records indicates that Dr. Rodgers did not offer an
opinion or describe any functional limitations about plaintiff's
low back pain. Contrary to plaintiff's contention, Dr. Rodgers'
records do not indicate a "worsening of his condition, despite
ongoing treatment." Rather, the records indicate that his
condition had remained static since his injury in 1996. (Tr.
238.) To be sure, an ALJ is not required to discuss every piece
of evidence. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006,
1012 (9th Cir. 2003). Additionally, the records from Dr. Rodgers
all pre-date plaintiff's alleged onset date of November 16, 2000,
by at least a year and a half and do not pertain to any specific

functional abilities during the relevant time period.
Accordingly, the ALJ did not err in omitting a discussion of Dr.
Rodgers' records.[1]

Plaintiff alleges that the ALJ failed to discuss the records
from the Walla Walla Memorial VA Medical Center, from which
plaintiff sought treatment for assorted conditions from January
2001 to April 25, 2005.  A review of the records cited by
plaintiff and a careful review of the ALJ's decision reveals that
the ALJ did discuss many of those records and assessments.
Again, an ALJ is not required to discuss every shred of evidence
presented, but rather is required to discuss significant,
probative evidence pertaining to plaintiff's impairments.
Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

I find no error in the ALJ's discussion of plaintiff's
treatment for Hepatitis C by Praveen Roy, M.D.  Under Dr. Roy's
care, plaintiff was treated for Hepatitis C with Interferon from
January 2003 to July 2003.  Dr. Roy opined on April 22, 2003 that
plaintiff was unable to work due to fatigue, muscle aches, and
pain and that plaintiff would be on the medication for six
months.  The ALJ noted that the fatigue and pain caused by the
Interferon treatment subsided following completion of the

---

[1]Plaintiff's contentions regarding Dr. Mark Sternfeld, Dr.
Gary Gleason, and Dr. Guy Gehling suffer the same fate.  Their
records also considerably pre-date plaintiff's amended alleged
onset of disability--November 16, 2000.

treatment.  The ALJ also noted that plaintiff's hepatitis
treatment was successful; plaintiff did not have any negative
ocular health issues and did not need follow-up care for his
hepatitis.  The ALJ noted that in January 2004, his hepatitis was
no longer active.  (Tr. 499, 503.)  Accordingly, the ALJ gave Dr.
Roy's 2003 opinion about plaintiff's inability to work no weight.
See 20 C.F.R. §§ 404.1525(c), 416.925(c)(4)("the evidence must
show that your impairment(s) has lasted or can be expected to
last for a continuous period of at least 12 months.").  Having
carefully reviewed Dr. Roy's medical records, I conclude the
ALJ's decision  is supported by substantial evidence.

     The ALJ also adequately discussed a January 6, 2004
psychological evaluation by Cynthia L. Holm, M.D, another of
plaintiff's providers at Walla Walla VA Medical Center.  Dr. Holm
discussed plaintiff's past assessment of dysthymia and learning
disorders.  In the evaluation, plaintiff described to Dr. Holm
his then current depressive symptoms, which he attributed to his
legal, relational, and money problems.  The ALJ noted the GAF of
70 assigned by Dr. Holm, and Dr. Holm's opinion that plaintiff
did not suffer any psychiatric diagnosis that would preclude his
employment at that time.  Having reviewed Dr. Holm's records, I
find no error in the ALJ's treatment of them.

     However, I find the ALJ did err in evaluating the medical
evidence of Melvern Laidlaw, M.D., also affiliated with Walla

14 - OPINION AND ORDER

Walla VA Medical Center.  Dr. Laidlaw conducted a physical
evaluation of plaintiff on January 6, 2004.  The ALJ noted that
the Dr. Laidlaw diagnosed mild to moderate degenerative joint
disease at C4-5, with a traumatic injury to the lumbar spine,
with residual moderate to marked degenerative disc disease at L3-
4 and L4-5, and mild scoliosis.  The ALJ noted that Dr. Laidlaw
opined the plaintiff's Hepatitis C does not prevent employment.
Dr. Laidlaw also opined that plaintiff's disabilities of the
spine prevented employment at that time.  However, the ALJ
offered no reasons for rejecting Dr. Laidlaw's opinion of
disability except to state that he favored the opinion of a non-
examining consulting physician who recommended plaintiff was
capable of medium capacity work.  I conclude the ALJ's rejection
of Dr. Laidlaw's opinion is not adequately supported.

    When evaluating conflicting opinions, the ALJ must offer
specific and legitimate reasons for doing so.  Rollins v.
Massanari, 261 F.3d 853, 856 (9th Cir. 2001.)  The opinion of a
non-examining, consulting physician can constitute substantial
evidence justifying the rejection of an opinion of an examining
physician, provided the opinion of the consulting physician is
"consistent with other independent evidence in the record."
Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  To
support his RFC of medium, the ALJ relied upon the opinion of a
consulting physician Mary Ann Westfall, M.D., who completed a

15 - OPINION AND ORDER

physical residual functional capacity assessment on May 31, 2005.
In that assessment, Dr. Westfall concluded that plaintiff could
perform medium capacity work, including the ability to frequently
climb, balance, stoop, kneel, and crouch.  (Tr. 633.)  But in
this case, other record support for an RFC of medium capacity
work is lacking.  Indeed, no other medical evidence in
plaintiff's voluminous record supports an RFC of medium capacity
work.

     The Commissioner claims an examination of plaintiff by
Joseph H. Diehl, M.D. on January 15, 2003 supports the ALJ's RFC
of medium work.  Plaintiff reported to Dr. Diehl that he can
drive a car, but that he experiences pain all the time, with
numbing to the left leg.  Dr. Diehl noted a full range of motion
of the cervical and lumbar spine, and that plaintiff had no
difficulty going from sitting to standing or getting onto the
examination table.  Dr. Diehl concluded that plaintiff:

> may have difficulty with work activities that
> require standing for longer than two or three
> hours at a time and for more than five to six
> hours out of an eight hour day.  He may have
> difficulty with work activities that require
> walking on uneven ground or climbing ladders
> and stairs on a frequent basis.  He may have
> difficulty with work activities that require
> bending, stooping, squatting, kneeling or
> lifting and carrying more than 20 pounds on a
> frequent basis.  (Tr. 253.)

The ALJ claims he incorporated Dr. Diehl's opinion into his RFC
of medium.  However, I conclude that a fair reading of Dr.

Diehl's opinion simply does not support an RFC of medium capacity work with the very limited postural restrictions asserted by the ALJ.[2]

And, as plaintiff correctly contends, the ALJ's failure to discuss the records of Tim Foley was erroneous.  Mr. Foley is a physical therapist from whom plaintiff sought an evaluation on November 1, 2006.  Mr. Foley saw plaintiff one time and opined:

> I would not recommend he do more than sedentary work with a 5 to 10 pound lifting limit.  I told him I did not know if he was competitively employable based on the acute as well as chronic pain.  (Tr. 655.)

Although Mr. Foley is not competent to provide a medical opinion because he is not an acceptable medical source, Mr. Foley's examination provides information as to the severity of plaintiff's back pain and his functional limitations at that time.  SSR 06-03p.  Clearly, Mr. Foley's assessment that plaintiff could lift only ten pounds conflicts with the ALJ's determination that plaintiff was capable of lifting 50 pounds. Such a discrepancy in the evidence cannot be dismissed without

---

[2]Interestingly, the ALJ relied upon this examination by Dr. Diehl as support for his December 10, 2004 decision in which he assessed plaintiff with an RFC of light duty work.  The ALJ offers no explanation, other than citing the consulting physician's opinion, that plaintiff's RFC now supports medium capacity work.  A careful review of the record does not indicate any medical improvement in plaintiff's back condition from 2004 to 2007 that would support such an inference, nor does the ALJ articulate such a basis.

explanation.  The ALJ's failure to discuss Mr. Foley's opinion whatsoever when considering plaintiff's RFC was erroneous. Vincent v. Heckler, 739 F.2d at 1394-95 (ALJ must discuss medical information that is significant and probative).

In short, the ALJ failed to provide substantial and legitimate reasons for rejecting the opinion of Dr. Laidlaw and erred in omitting any discussion of Mr. Foley.

**III. Lay Witness Testimony**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Dodrill v. Shalala, 12 F.3d at 919; Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(finding the ALJ erred by failing to account for lay witness testimony about a claimant's serious coughing problems).  The ALJ is required to account for competent lay witness testimony, and if he rejects it, provide germane reasons for doing so.  Lewis, 236 F.3d at 511.

Here, the ALJ considered the witness statements provided by plaintiff's mother, W. Maxine Connely, and plaintiff's friends, William Devin and Harold Fruitte.  Plaintiff's mother stated that plaintiff has difficulty getting around and relies on prescription pain medication and muscle relaxers in order to function.  She also stated that he is unable to sit for long

periods of time and sometimes walks bent over.  Mr. Devin also
stated that plaintiff must switch positions often and is
sometimes in tears with the pain.  The ALJ made the following
finding:

> [B]ecause these parties have a personal
> relationship with [plaintiff] and lack the
> expertise and possibly the motivation to
> offer an objective or functional assessment,
> their statements regarding the claimant's
> symptoms and limitations are considered with
> caution. (Tr. 502.)

To be sure, the fact that a lay witness has a relationship
with the claimant alone is an insufficient reason for rejecting
lay testimony.  Smolen v. Chater, 80 F.3d at 1288-89; Regennitter
v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir.
1999).  In this case, the ALJ has offered little more than a
generalization and has failed to provide specific germane reasons
for rejecting the testimony from each of the witnesses.

## IV. Credit As True

Here, the ALJ failed to provide clear and convincing reasons
for discrediting the plaintiff's testimony about his subjective
symptoms, and thus such symptoms were erroneously excluded from
the plaintiff's RFC.  Lingenfelter v. Astrue, 504 F.3d 1028, 1040
(9th Cir. 2007).  The ALJ also failed to provide legally
sufficient reasons for rejecting the testimony of an examining
physician, lay witness testimony, as well as omitting the

discussion of probative evidence from Mr. Foley, also resulting in a defective RFC. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1038 (2000).

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. <u>Id.</u> The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." <u>Id.</u> The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. <u>Id.</u>

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003).

Here, it is clear that when the testimony of plaintiff, Dr. Laidlaw and the lay testimony is credited, benefits should be

awarded.  Plaintiff testified that he must change positions often
and lie down for portions of the day.  The vocational expert
testified that if plaintiff must lie down for an hour or so every
couple of hours, he could not maintain competitive employment.
(Tr. 718.)  Dr. Laidlaw opined in January 2004 that plaintiff was
not employable due to his impairments of the spine.  Because no
outstanding issues must be resolved before a determination of
disability can be made, and it is clear from the record that the
ALJ would be required to find plaintiff disabled if all the
improperly rejected testimony were credited, this case should be
remanded for an award of SSI benefits under Title XVI of the
Act.[3]   See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir.
2004).

Because I have remanded for an immediate award of benefits,
I do not address plaintiff's remaining issues.

_____

[3]Plaintiff submitted applications for DIB benefits and SSI
benefits.  The record does not establish that plaintiff is
disabled as of the date of last insured, thus plaintiff is not
entitled to DIB benefits.

## **CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this _4___ day of May, 2009.


_/s/  Malcolm F. Marsh_____

Malcolm F. Marsh
United States District Judge